UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| MEGAN AROON DUNCANSON, et al. | Case No. 6:14-CV-00704-CEH-KRS |
| Plaintiffs, | |
| v. | |
| WINE & CANVAS DEVELOPMENT, LLC, et al. | |
| Defendants, | |

**DEFENDANTS' MOTION TO SET ASIDE COURT'S ORDER (ECF 179) FOR ATTORNEY FEES AND EXPENSES OF LITIGATION AND OTHER RELIEF**

Defendants, WINE & CANVAS IP HOLDINGS LLC, et al., hereby move the Court to (1) set aside the Court's Order issued this morning, February 9, 2016, (ECF 179) (the "Dismissal Order"), (2) award attorney fees and costs of litigation in an amount to be determined at a later date, (3) for dismissal of Plaintiffs' claims WITH PREJUDICE, and (4) for other just and proper relief for the reasons set forth herein:

**I.      SUMMARY OF ARGUMENT AND RELIEF REQUESTED.**

Pursuant to Plaintiffs' *NOTICE OF SCRIVENER'S ERROR IN SECOND AMENDED COMPLAINT AND WITHDRAWAL OF COUNTS 108, 119, AND 121* (ECF 176) ("Dismissal Notice 1") and *NOTICE OF VOLUNTARY DISMISSAL* (ECF 178) ("Dismissal Notice 2") (the "Dismissal Notices"), Plaintiff, MEAGAN AROON DUNCANSON, ("Duncanson") seeks to unilaterally and improperly dismiss certain claims in the litigation (1) without the consent of Defendants as required by F.R.C.P. 41, and (2) without having an attorney conference as required by local rules.  However, as an alternative, Defendants would not object to a dismissal if it was WITH PREJUDICE as to any and all allegations set forth by Duncanson in any prior and/or current pleadings and as to matters relating to and/or arising out of such allegations and as to matters arising prior to the date of an order dismissing the same; provided, however, that Defendants would not object to a dismissal WITHOUT PREJUDICE if Defendants are reimbursed in full all legal fees and expenses incurred throughout this litigation within thirty days of any such order. Furthermore, in either event, Plaintiffs are required to comply with Local Rules regarding costs.

Finally, regardless of how this Court rules on Defendants' request to set aside the Dismissal Order (ECF 179), Defendants respectfully requests that the Court issue an order awarding reimbursement of these fees because, based on the history of this ligation, Plaintiffs, and/or their Counsel, have engaged in unreasonable and vexatious conduct that has needlessly multiplied the proceedings.

## II.  PROCEDURAL POSTURE AND HISTORY.

### A.  THE PRIOR INDIANA ACTION.

On February 19, 2013, now-dismissed Defendant, WINE AND CANVAS DEVELOPMENT LLC, ("WNC Indy") filed a lawsuit against Duncanson (who was in the position of defendant) and her company, MADART, INC. which is currently pending within the State of Indiana before the Hamilton County Superior Court captioned Wine & Canvas Development, LLC, Cause No. 29D03-1302-PL-1727 (the "*Indiana Action*") alleging, among other claims, defamation arising out of Duncanson's alleged defamatory statements falsely accusing WNC Indy of copyright infringement and theft relating to the very works identified and factual allegations alleged in this litigation.  *See* ECF 68-2, which is a true and accurate copy of a pleading filed in the *Indiana Action* for a more detailed factual background.  Despite the existence of a federal question (and even diversity grounds), Duncanson never attempted to remove the *Indiana Action* to federal court so as to assert compulsory counterclaims directly akin to the claims alleged herein.

In the *Indiana Action*, Duncanson moved to dismiss the *Indiana Action* for lack of personal jurisdiction and, after about a year and half of batting back and forth, including depositions, discovery, change of judge motions, etc., Duncanson's Motion to Dismiss was denied in the *Indiana Action* on May 1, 2014 (the "Denial Date").  *See* ECF 68-3.  Unhappy with the losing the dismissal fight in the *Indiana Action* and despite all the time and effort expended in litigating the *Indiana Action* not only by the parties but also by the Indiana State Court, Duncanson commenced this retaliatory action a mere four (4) days later, on May 5, 2014, against WNC Indy and anyone else irrespective of whether they were interested and/or proper parties as well as somehow convinced Wiseman to joint her despite the fact that the alleged claims of infringement by Duncanson are completely factually separate from those of Wiseman.

Aware that this litigation was being instituted in Florida, counsel for Duncanson in the *Indiana Action* attempted to delay the filing of an Answer by requesting an extension of time. *See* ECF 68-4. On May 12, 2014, only after this action was instituted, Duncanson's counsel filed an Answer in the *Indiana Action* asserting no counterclaim but asserting the following defense: "Jurisdiction over the subject matter of this lawsuit is lacking because the copyright infringement lawsuit against Wine & Canvas currently pending the United States District Court for the Middle District of Florida pre-empts Plaintiff's claims in this case." *See* ECF 68-5 at 3 ¶ 9. The affirmative defense is an admission by Duncanson that the claims in this litigation are compulsory to the claims in the this Action.

### B. THIS ACTION.

On May 5, 2014, Plaintiffs' filed their Complaint. ECF 1. Between May 5, 2014, and July 1, 2014, Defendants repeatedly sent numerous communications identifying Plaintiffs' pleading and jurisdictional issues. Given that Plaintiffs were unwilling to voluntarily take corrective action, on July 1, 2014, Defendants filed their first Motion to Dismiss (ECF 28) ("Dismissal Motion 1"). Due to the overwhelming number of issues with Plaintiffs' pleading, Dismissal Motion 1 (ECF 28) took a tremendous amount of time and expense to complete. More importantly, Dismissal Motion 1 (ECF 28) provided a point by point and detailed roadmap as to most of the pleading and jurisdictional errors in Plaintiffs' Complaint (as later found to be accurate in the Reports and Recommendations (ECF 123 and ECF 124)). On July 16, 2014, Plaintiffs moved for an extension of time to file a response to Dismissal Motion 1 (ECF 28). *See* ECF 34. Defendants did not oppose this extension request given based on Plaintiffs' representation that a response would be forthcoming. On July 17, 2014, the Court granted said extension request up to and including July 18, 2014. See ECF 35. However, on July 18, 2014, Plaintiffs did not file a response to Dismissal Motion 1 (ECF 28). Rather, on July 18, 2014, Defendant filed an Amended Complaint (ECF 36) (the "Amended Complaint"). The relevant part for purposes of the matter at hand is that, despite being provided with a virtual roadmap and additional time to prepare their responsive filing and/or rather than addressing the issues raised in Dismissal Motion 1 (ECF 28) through an amended pleading, Plaintiffs' Amended Complaint did not address any of the jurisdictional and/or pleading issues identified in Defendants' Dismissal Motion 1 (ECF 28) (and for which had been repeatedly

been brought to their attention prior to the filing of Dismissal Motion 1 (ECF 28)). Rather, Plaintiffs used the detailed information supplied by Defendants in the Dismissal Motion 1 (ECF 28) (regarding the organizational structure of the Wine and Canvas licensing system) in order to amend their prior Complaint and, in doing so, disregarded any of matters raised in Dismissal Motion 1 (ECF 28) that didn't align with goal of keeping this litigation in Florida at any cost. An amended pleading in response to a dismissal motion is supposed to eliminate issues, not compound them. However, Plaintiffs actually multiplied the jurisdictional and pleading issues that were originally contained in their Complaint tenfold through the filing of their Amended Complaint by adding numerous parties and numerous new allegations of infringement alleged to have occurred at other licensed locations throughout the continental United States. See ECF 70-9 (a redlined comparison between Plaintiff's Complaint and Amended Complaint). As a result of the forgoing, the financial resources expended by Defendants related to the filing of Dismissal Motion 1 (ECF 28) were wasted due to Plaintiffs' unwillingness to, ONCE AGAIN, correct even a single one of these pleading and/or jurisdictional issues within their Amended Complaint.

Given that Plaintiffs were once again unwilling to voluntarily take proper action (this time in their Amended Complaint), on September 16, 2014, Defendants filed their second Motion to Dismiss (ECF 70) ("Dismissal Motion 2"). Once again, due to all of the overwhelming number of issues with Plaintiffs' pleading, all of which were substantially compounded with the filing of Plaintiffs' Amended Compliant, Dismissal Motion 2 (ECF 70) (despite the tremendous amount of time spent on Dismissal Motion 1 (ECF 28)) also took a tremendous amount of time and financial resources to complete. once again, Dismissal Motion 2 (ECF 70) provided yet another point by point and detailed (and updated) roadmap as to most of the pleading and jurisdictional errors in Plaintiffs' Amended Complaint (as affirmed by this Court in the Reports and Recommendations (ECF 123 and ECF 124)). A massive response to Dismissal Motion 2 (ECF 70) was filed by Plaintiffs on October 7, 2014 (ECF 75) (Plaintiff's "Dismissal Response"). Again, Plaintiffs did not address the issues raised in Defendants' Dismissal Motion 2 (ECF 70) head on. Instead, using a shifting-sands approach, Plaintiffs began amending their factual allegations in an effort to avoid (rather than to respond to) the legal challenges raised by Defendants in Dismissal Motion 2 (ECF 70) (and repeatedly raised by Defendants prior thereto). This shifting-sands approach continually

employed by Plaintiffs throughout this litigation to constantly change their positions every time they become face to face with having to directly deal with the pleading and jurisdictional issues (issues raised repeatedly by Defendants at tremendous financial burden).  Rather than conducting discovery in order to directly dispute the factual and legal issues raised by Defendants head on, Plaintiffs' again employed the shifting-sands approach.  As a result, Plaintiffs' Dismissal Response (ECF 75) was supported only by wildly inaccurate and unsupported factual allegations and legal conclusions hastily drawn from soundbites which Plaintiffs mistakenly interpreted from depositions in other actions, online websites and/or a variety of procedurally improper sources.  Just as they did by filing their Amended Complaint, Plaintiffs once again avoided addressing the pleading and jurisdictional issues raised in Dismissal Motion 2 (ECF 70) by hastily amending their allegations in a manner that they believed would allow their claims to survive.  However, this time around, rather than changing their factual allegations through the filing of an amended pleading, Plaintiffs attempted to do so through the filing of their Dismissal Response (ECF 75).  Furthermore, in order to keep up with Plaintiffs' ever-moving targets, Defendants had to expend a great deal of additional financial resources in having to file a far more in-depth reply brief (ECF 81) the same, which Defendants filed on November 4, 2014.  As a result, the financial resources expended by Defendants related to the filing of Dismissal Motion 2 (ECF 70) were once again wasted due to Plaintiffs using the shifting-sands approach in an effort to avoid having to deal head-on with the jurisdictional and pleading issues raised.

On February 23, 2015, the Court issued an order scheduling an evidentiary hearing in this matter for April 6, 2015 (the "Hearing").   In scheduling the Hearing, the Court explicitly stated that it "will assess personal jurisdiction 'as to each defendant separately, and for a specific jurisdiction analysis, as to each claim separately.'"  See ECF 89 at 2 (quoting *KVAR Energy Sav., Inc. v. Tri-State Energy Solutions, LLP*, No. 6:08-cv-85-Orl-19KRS, 2009 WL 103645, at *3 (M.D. Fla. Jan. 15, 2009)).  The Court further warned that "[t]he parties should prepare and present their evidence accordingly." See ECF 89 at 2.  Again, Plaintiff, though aware of the right, chose not to conduct jurisdictional discovery prior to the filing of their massive Dismissal Response (ECF 75). And again, the Parties had now fully briefed the jurisdictional issues.   However, despite the forgoing, Plaintiffs launched a substantial discovery and deposition campaign; and, once again, at

substantial cost to Defendants. Indeed, given the fact the Plaintiffs had developed a consistent and costly pattern of changing their target every time Defendants (at considerable cost) fired an arrow (coupled with Plaintiffs' costly discovery campaign), Defendants had no reasonable alternative but to engage in additional discovery, including depositions, in an effort to lock the target down once and for all. Even still, the journey was extremely taxing and arduous. Because Plaintiffs' positions were constantly changing, Plaintiffs were unable to agree on facts and law that remained in dispute nor the issues to be resolved at the Hearing.

Even after all the expense and time Defendants put into preparing for the Hearing, the costs of traveling to Florida, rental cars, lodging, and all the preparation, Plaintiffs' pattern of moving the target continued, yet again, at the Hearing. As the Court found in the Reports and Recommendations (ECF 123 and ECF 124), "When asked on separate occasions for the bases upon which Plaintiffs contended the Court could exercise personal jurisdiction, counsel for Plaintiffs offered shifting responses. Compare Doc. No. 114, at 7:25–13:4, with id. at 12:11–13:4, and id. at 240:10–247:13." See ECF 123 at 3. As the Court also recognized, "At that hearing, counsel for Plaintiffs appeared unaware that the amended complaint asserts more than one count. Doc. No. 114, at 5:1–5." See ECF 123 at 3. Given the ever-changing positions of Plaintiffs, the Court (just has the Defendants have repeatedly attempted to do time and time and again prior to the Hearing) attempted to pin Plaintiffs down as to the allegations and legal theories they were specifically proceeding on for purposes of a post-hearing brief. Defendants took detailed notes so to be sure to direct the final briefing to the specific matters identified. The Court then ordered the parties to prepare post-hearing briefs. Astoundingly, in the words of this Court, "These bases shifted yet again in Plaintiffs' post-hearing brief." See Doc. No. 116; see also ECF 123 at 14 (Judge Spaulding: "Plaintiffs have offered shifting basis for the exercise of the Court's jurisdiction during the pendency of the Motion. Accordingly, I will address only those bases identified in Plaintiffs' post-hearing brief, see Doc. No. 116, which is the most recent articulation of their jurisdictional theories.") (emphasis added).

As a result of these issues, numerous dismissal motions have been filed in an effort to ferret out Plaintiffs' viable claims from those claims that are not viable. However, at each step in this litigation, Plaintiffs' have utilized a shifting-sands approach whereby Plaintiffs continuously

change their underlying allegations in an effort to thwart Defendants' legitimate challenges to the viability of Plaintiffs' claims. Fortunately, the Court prohibited Plaintiffs from utilizing the shifting-sands approach going further. Judge Spaulding nevertheless found that Plaintiffs should not be permitted to keep changing the underlying allegations against IP Holdings. *see* ECF 123 at 18-19 (emphasis added), wherein Judge Spaulding states:

> "While authority does exist suggesting that the addition and maintenance of an infringing work in a collection that is distributed publicly constitutes infringement,…a claim on that basis falls outside of the scope of the complaint as currently plead.
>
> \*\*\*\*   \*\*\*\*   \*\*\*\*
>
> <u>To hold otherwise would countenance a **shifting sands** approach to the personal jurisdiction</u> inquiry, rather than a focus on the scope and allegations of the complaint itself. Given Duncanson's failure to plead a claim on these bases, I recommend that the Court determine that the exercise of specific jurisdiction over her direct, contributory, or vicarious infringement claims is not warranted. Accordingly, Duncanson's claims against W&C IP Holdings are due to be dismissed.

### C. CURRENT POSTURE OF THE LITIGATION.

This case was commenced on May 5, 2014. For 2 years, personal jurisdiction (the "Jurisdictional Issue") and the availability of statutory damages and attorney fees (the "Statutory Relief Issue") has been at the forefront of this litigation. The Jurisdictional Issue has been litigated head on. However, the Statutory Relief Issue could not be attacked directly until the filing of Plaintiffs' SECOND AMENDED COMPLAINT (ECF 146) (Plaintiffs' "Third Complaint") as prior pleadings were shotgun pleadings lumping all Defendants together without any clear delineation.

Overcoming Plaintiffs' shifting-sands approach has been a tremendous burden to Defendants as Plaintiffs' approach has needlessly multiplied these proceedings at great cost to Defendants. Nevertheless, after 2 years of litigation, numerous depositions, dozens of sets of interrogatories and requests for production, airline expenses, hotel expenses, car rental fees, a mini-trial, and more than $150,000.00 in litigation fees and expenses—all of which were incurred as a result of Plaintiffs' shifting-sands approach—Plaintiffs finally filed a complaint (i.e., their Third Complaint) that clearly specified exactly what their allegations were and which Defendants their allegations were against. Unfortunately, in Plaintiffs' Third Complaint, Plaintiffs vastly changed

their underlying allegations to an even greater degree than they had ever done before utilizing the previously-prohibited shifting-sands approach.  As a result of the forgoing, Plaintiffs' Third Complaint increased by 300 pages (not including Exhibits),159 Counts, and made vast changes to both the underlying theories of liability as well as to the grounds supporting personal jurisdiction.  Despite the forgoing, however, Plaintiffs' Third Complaint was clear enough to allow Defendants to finally attack the Statutory Relief Issue directly (in addition to again attacking the Jurisdictional Issue).   Accordingly, on January 25, 2016, Defendants filed another *MOTION FOR DISMISS[]* (ECF 166 with ECF 167) (the "Pending Dismissal Motion") seeking to, without limitation[1], dismiss (1) all of Duncanson's claims for lack of personal jurisdiction and/or all of Duncanson's claims for statutory damages, and (2) all of Wiseman's claims for Statutory Damages.

Given the new allegations and legal theories of Plaintiffs' Third Complaint, Defendants' position throughout this litigation regarding the Jurisdictional Issue and the Statutory Relief Issue were finally confirmed.  Specifically, with regard to the Statutory Relief Issue, it is now clear that if Plaintiffs were ever successful in this litigation, the most they could ever receive monetarily against any Defendant would be actual damages (i.e., the net profits) as statutory damages are unavailable.  To put it in perspective, if Wiseman were successful on her claims against all of the entity Defendants, the most Wiseman could ever recover would be net profits; which amounts $6,988.48.  Yet Wiseman's demand throughout this litigation has been just under a Million Dollars-a position which has caused this matter to be litigated vigorously.

Plaintiff, SHERRI MARIE WISEMAN ("Wiseman"); recently accepted certain *NOTICE[S] OF ACCEPTANCE OF RULE 68 OFFER[S] OF JUDGMENT* (*see* ECF 174 and ECF 175).  Additionally, on February 3, 2015, Defendants sent a draft Counterclaim to Plaintiffs for review before seeking leave to file.[2]

Knowing that Defendants' Counterclaim is sitting just over the horizon, Duncanson, on February 8, 2016, yesterday, unilaterally and improperly filed to voluntarily dismiss certain claims in the litigation (1) without the consent of Defendants as required by F.R.C.P. 41, and (2) without

---

[1] While the Pending Dismissal Motion presents several other grounds for which dismissal of claims is appropriate, only personal jurisdiction challenges and statutory damage challenges are relevant for purposes of this filing.
[2] Incidentally, the next day, February 4, 2016, the Court issued an amended Scheduling Order that prohibited additional pleadings.   On February 8, 2016, Defendants filed that certain *MOTION TO EXTEND TIME TO ASSERT COUNTERCLAIMS* (ECF 177), which is now pending before this Court.

having an attorney conference as required by local rules. In doing so, Plaintiffs are again employing the same tactics that have needlessly multiplied these proceedings in the past by once again attempting to reposition themselves to avoid having their claims dismissed by the Court; all at the expense and detriment of Defendants. In fact, Plaintiffs are even trying to have this Court dismiss Duncanson's claims WITHOUT prejudice.

After having already stayed the Indiana Action, after already having dismissed claims an parties in this very litigation, and after having already sought to voluntary dismiss additional claims less than thirty (30) minutes prior to filing yet another dismissal attempt (ECF 176), Defendants filed yet another dismissal attempt (ECF 178).

### III.     ARGUMENT 1: IMPROPER DISMISSAL UNDER F.R.C.P. 41.

After having already stayed the Indiana Action, after already having dismissed claims an parties in this very litigation with each amended pleading, and after having already sought to voluntary dismiss additional claims less than thirty (30) minutes prior to filing yet another dismissal attempt (ECF 176), Defendants filed yet another dismissal attempt (ECF 178) is improper. See F.R.C.P. 41(B) ("But if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits."). As such, it would be improper to dismiss the Duncanson's claims without prejudice.

Once a dismissal occurs, the action may be dismissed only by a stipulation signed by all parties who have appeared, Rule 41(a)(1)(B), or "by court order, on terms that the Court considers proper." Rule 41(a)(2). At that point, voluntary dismissal is a privilege to be obtained through an exercise of this Court's discretion, not a matter of right. *Negron v. City of Miami Beach*, 113 F.3d 1563, 1571 (11th Cir. 1997); *Zagano v. Fordham University*, 900 F.2d 12, 14 (2d Cir. 1990). The factors considered in deciding whether to allow a dismissal without prejudice include the plaintiff's diligence in bringing the motion, any "undue vexatiousness" on plaintiff's part, the

defendant's effort and expense in preparation for trial, the duplicative expense of relitigation, and the adequacy of plaintiff's explanation for the need to dismiss. Id.  Courts deny permission to dismiss without prejudice when the dismissal is sought to avoid imminent defeat in the litigation. *Minnesota Mining & Mfg. Co. v. Barr Laboratories*, 289 F.3d 775, 783-784 (Fed. Cir. 2002); *Phillips USA v. Allflex USA*, 77 F.3d 354, 358 (10th Cir. 1996). When exercising its discretion in considering a dismissal without prejudice, the Court should consider first and foremost the interests of the defendant, for Rule 41(a)(2) exists chiefly for protection of defendants. *Fisher v. Puerto Rico Marine Mgmt.*, 940 F.2d 1502, 1503 (11th Cir. 1991).

Accordingly, the existence of prejudice to the defendant from allowing the dismissal is exceptionally important. The prejudice to be considered, however, must be prejudice other than the possibility of exposure to other litigation. Voluntary dismissal should be denied when sought to avoid an anticipated loss on the merits. Here, dismissal without prejudice should be denied both because of prejudice to Defendants and because of the all of the factors described above.

IV.   **ARGUMENT 2: REQUEST FOR FEES, EXPENSES AND COSTS UNDER RULE 11, 28 U.S.C. § 1927, FEDERAL LAW AND/OR THE COURT'S INHERENT AUTHORITY.**

From May 5, 2014, through present, the Defendants have incurred over $150K litigation fees and expenses in this Action.  These amounts do not include the $21,154.51 in litigation fees arising from the suit against Ms. Duncanson in the Indiana Action, which has now been stayed pending disposition of the matters in this litigation since 2014.  Defendants respectfully requests that the Court issue an order awarding reimbursement of these fees because, based on the history of this ligation,  Plaintiffs, and/or their Counsel, have engaged in unreasonable and vexatious conduct that has needlessly multiplied the proceedings.

"[I]n order to be entitled to sanctions under Rule 11, [28 U.S.C. §] 1927, or the Court's inherent authority, a movant must show that an attorney pursued objectively untenable factual or

legal positions, engaged in unreasonable and vexatious conduct that multiplied the proceedings, or acted in bad faith." *Palaxar Grp., LLC v. Williams* (M.D. Fla., 2014). Statutorily, counsel is liable for any excessive costs he induces the opposing party to incur. *See* 28 U.S.C. § 1927. Section 1927 states: "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927; *see also Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003). "To justify an award of sanctions pursuant to section 1927, an attorney must engage in unreasonable and vexatious conduct; this conduct must multiply the proceedings; and the amount of the sanction cannot exceed the costs occasioned by the objectionable conduct." *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003) (emphasis in original). "'Bad faith' is the touchstone." *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003). "[U]nder section 1927 attorneys are obligated to avoid dilatory tactics throughout the entire litigation." Peer v. Lewis, 606 F.3d 1306, 1314 (11th Cir. 2010) (citing *Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir. 2001); *LaSalle Nat'l Bank v. First Conn. Holding Group*, LLC, 287 F.3d 279, 288 (3d Cir. 2002) (stating that sanctions under 28 U.S.C. § 1927 "are intended to deter an attorney from intentionally and unnecessarily delaying judicial proceedings" (emphasis in original))).

In comparable cases, federal judges in Florida have either refused to grant dismissal without prejudice, or they have allowed dismissal but required payment of litigation expenses including attorney fees. *Pezold Air Charters v. Phoenix Corp.*, 192 F.R.D. 721, 728 (M.D. Fla. 2000) (court refused to dismiss because defendant filed counterclaims without any evidence, but for the purpose of increasing plaintiffs' litigation costs; "Outright dismissal should be refused . . . when a plaintiff seeks to circumvent an expected adverse result"); *Tesma v. Maddox-Joines, Inc.*,

254 F.R.D. 699, 701-702 (S.D. Fla. 2008) (plaintiff sought voluntary dismissal only after defendant moved to dismiss; court grants dismissal with prejudice but awards attorney fees as condition of dismissal because "[d]efendant has been forced to litigate this case without reason" and plaintiff dismissed "because he recognizes that it lacks all merit"); *Sobe News v. Ocean Drive Fashions*, 199 F.R.D. 377, 378 (S.D. Fla. 2001) (dismissal of complaint filed in January 2000 conditioned on payment of defendants' expenses, including attorney fees). *See also Ortiz v. D & W Foods*, 657 F. Supp.2d 1328, 1330-1331 (S.D. Fla. 2009) (fees granted both as condition of dismissal and under 28 U.S.C. § 1927); *Witbeck v. Embry Riddle Aeronautical Univ.*, 219 F.R.D. 540, 542 (M.D. Fla. 2004) (motion to dismiss denied outright when filed in response to motion for summary judgment). In this case, too, Plaintiffs' Dismissal Notices (and, at the very least, Plaintiff's Second Dismissal Notice-ECF 178) should be denied, or granted only subject to the condition that plaintiffs pay Defendants' expenses including reasonable attorney fees.

Plaintiffs' constantly changing legal arguments and factual positions have multiplied this litigation needlessly as well as the enormous costs.  As a result, whatever the Court should ultimately decide, Plaintiffs request that the Court grant fees, costs and expenses to Defendants in an amount to be determined against Plaintiffs and/or their Counsel.  Similar relief was previously requested and denied by this Court.  In denying the relief requested, the Court stated as follows:

> Lastly, the Court addresses Defendants' request for an award of fees, costs, and expenses which is contained within Defendants' response to Plaintiffs' motion. (Doc. 142). Plaintiffs have not responded to the motion. A district court has several sources of authority to sanction counsel who appear before it: Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and the Court's inherent authority. *See* Fed. R. Civ. P. 11; *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2006). The Eleventh Circuit has cautioned that "an attorney's conduct must be particularly egregious to warrant the imposition of sanctions." *Amlong & Amlong*, 500 F.3d at 1242. **In their motion, Defendants' counsel lays out <u>in great detail</u> the procedural history of this case and the <u>tremendous amount of effort</u> which has been <u>expended</u> on behalf of Defendants in defending a lawsuit where <u>Plaintiffs have</u>**

> **yet to articulate any cognizable claim**. While the Court recognizes and appreciates the great amount of time, effort, and expense necessary to participate in litigation in federal court, it is not prepared at this time to issue the serious sanctions against Plaintiffs that Defendants request. **It has yet to be determined whether Plaintiffs have engaged in unreasonable or vexatious conduct that has multiplied the proceedings**. Thus, Defendants' motion will be denied.

*See* ECF 145 (emphasis added). Thus, while recognizing the history of this litigation, this Court perilously denied Defendants' request for fees because the Court found that "[i]t has yet to be determined whether Plaintiffs have engaged in unreasonable or vexatious conduct that has multiplied the proceedings." *Id*.

Given the current maneuvers of Plaintiffs, it is not beyond dispute that "Plaintiffs have engaged in unreasonable or vexatious conduct that has multiplied the proceedings." It is now Round 3. After having just shy of six (6) full months to draft and file their 300-page and 162-Count Third Complaint and after Defendants have yet again, at tremendous cost, expenses time and resources filing their third dismissal motion (i.e., the Pending Dismissal Motion), Plaintiffs are once again indirectly attempting to thwart yet a dismissal motion by attempting to avoid having to deal with the viability of Plaintiffs' claims. F.R.C.P. 41 was designed to prevent this precise scenario. Specifically, F.R.C.P. 41 is designed to prohibit a plaintiff from being able to unilaterally dismiss plaintiff's claims after a defendant has become invested in the litigation. Plaintiffs, who have jointly brought this case against Defendants, have cost Defendants now nearly $150K to $200K in legal fees and expenses; all of which has been in pursuit of claims that, even if successful, could only ever result in a damage award (on the best of days) of less than $10K per Plaintiff; which for Duncanson could never even happen as Duncanson has lacked personal jurisdiction in the State of Florida since day 1 of this litigation.

If Duncanson were permitted to unilaterally and voluntarily dismiss her claims at this stage of the litigation without any consequences whatsoever, all of Defendants' time and efforts, as well as the financial fortune it has had to incur as a result of Plaintiffs' shifting-sands

approach, would have been wasted; not to mention all the time and effort of this Court. The procedural posture of this case fits the very definition of "engaging in unreasonable or vexatious conduct that has multiplied the proceedings."

## IV.     CONCLUSION AND REQUEST FOR RELIEF:

Throughout the entirety of this case Plaintiffs have constantly employed the shifting-sands approach in order to avoid having to deal the viability of their claims. The Court has been extremely patient. Defendants have attempted to be as well. However, respectfully, Defendants believe that the time has come for certain finality. Duncanson's Dismissal Motions (and, at the very least, Duncanson's Second Dismissal Notice-ECF 179) should have been, and should be, denied and stricken. However, Defendants would not object to a dismissal if it was WITH PREJUDICE as to any and all allegations set forth by Duncanson in any prior and/or current pleadings and as to matters relating to and/or arising out of such allegations and as to matters arising prior to the date of an order dismissing the same; provided, however, that Defendants would not object to a dismissal WITHOUT PREJUDICE if Defendants are reimbursed in full all legal fees and expenses incurred throughout this litigation within thirty days of any such order. Furthermore, in either event, Plaintiffs are required to comply with Local Rules regarding costs.

Finally, regardless of how this Court rules on Defendants' request to set aside the Dismissal Order (ECF 179), Defendants respectfully requests that the Court issue an order awarding reimbursement of these fees (in an amount to be determined at a later date) because, based on the history of this ligation, Plaintiffs, and/or their Counsel, have engaged in unreasonable and vexatious conduct that has needlessly multiplied the proceedings.

WHEREFORE, Defendants request that the Court grant the relief as requested herein and for all other just and proper relief.

Date: February 9, 2016.                    Respectfully Submitted,

                              s/ P. Adam Davis
                              P. Adam Davis
                              DAVIS & SARBINOFF, LLP
                              9000 Keystone Crossing, Suite 660
                              Indianapolis, Indiana  46240
                              Telephone: (317)569-1296
                              Facsimile: (317)569-1293
                              E-mail: adavis@d-slaw.com

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that a copy of the foregoing was filed electronically as of the date indicated above.  Notice of this filing will be sent to the parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.  For those parties which are not registered with the Court's electronic filing system, the undersigned hereby certifies that a copy of the foregoing has been served by depositing a copy of the same in the United States mail, first class postage prepared.

Cynthia Conlin
Cynthia Conlin, P.A.
cynthia@cynthiaconlin.com

Date: February 9, 2016.                    Respectfully Submitted,

                              s/ P. Adam Davis
                              P. Adam Davis
                              DAVIS & SARBINOFF, LLP
                              9000 Keystone Crossing, Suite 660
                              Indianapolis, Indiana  46240
                              Telephone: (317)569-1296
                              Facsimile: (317)569-1293
                              E-mail: adavis@d-slaw.com