# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

MEGAN AROON DUNCANSON, et al.,

      Plaintiffs,

v.                                                          Case No: 6:14-cv-704-Orl-40KRS

SJ Wathen Bloomington, LLC, et. al,

      Defendants.
_____/

## MEMORANDUM OPINION AND ORDER

This cause is before the Court following a one-day bench trial on Monday, November 28, 2016. Having considered the pleadings, evidence, argument, and relevant legal authority, and having made determinations on the credibility of the witnesses, the Court hereby renders its decision on the merits of this case pursuant to Federal Rule of Civil Procedure 52.

**I.    BACKGROUND**

Plaintiffs, Megan Arron Duncanson ("Duncanson") and Sheri Marie Wiseman ("Wiseman") initiated this action against a variety of defendants on May 5, 2014. (Doc. 1). Plaintiffs are visual artists who have authored and hold copyrights to various works of art. Defendants hosted "paint parties" where customers were taught to paint a featured painting during the party. Plaintiffs allege that Defendants used their copyrighted works at various paint parties without their permission, in violation of the United States Copyright Act, 17 U.S.C. § 101.

The operative pleading is the Second Amended Complaint (Doc. 146), which contains a total of 163 counts of direct, contributory, and vicarious contributory copyright infringement. After several years of extensive motion practice, Plaintiff Wiseman and all defendants except for Defendant SJ Wathen Bloomington, LLC ("Bloomington") have been dismissed from the action. Duncanson and Bloomington litigated the remaining counts from the Second Amended Complaint (Counts 71–78) in a bench trial before the Court on November 28, 2016. Counts 71, 73, 75, and 77 allege direct infringement, and Counts 72, 74, 76, and 78 allege contributory infringement. In lieu of closing arguments, the parties submitted post-trial briefs containing their final arguments. (Docs. 313, 315).

The issues before the Court are as follows:

1. Whether Duncanson owns the various works of art involved in this dispute, known as Blue Depth, Bubbling Joy Collection, and Twisting Love 2007;
2. Whether Bloomington had any knowledge of the infringement activity that occurred; and
3. The correct calculation of damages.

## II.  JURISDICITION

This Court has jurisdiction pursuant to 28 U.S.C. §1331, as the case involves the alleged violation of the United States Copyright Act.

## III.  FINDINGS OF FACT

1. Duncanson is a full-time artist who has painted professionally since 1999. (Doc. 308, 17:3–9). Duncanson sells her artwork through her personal website, and through other on-line art websites, including Print on Demand, Fine Art America, Zazzle, Art.com, AllPosters.com, Redbubble, and Society6. (*Id.* at

26:18–24). Duncanson licensed the use of her artwork to Uptown Art—a paint party studio—which teaches students to paint some of her artwork during paint classes. (*Id.* at 44:14–25). Pursuant to her licensing agreement with Uptown Art, Ducanson receives a licensing fee of $2 for every student who attends a paint party class where her artwork is taught. (*Id.* at 44:25–45:14).

2. In 2006, Duncanson painted original works she entitled *Blue Depth*, (*Id.* at 21:13–15, 22:9–10), and *Bubbling Joy* (*Id.* at 19:18–25). In 2007, Ducanson painted an original work she entitled *Twisting Love* (*Id.* at 24:17–19). She created each of these paintings from her own imagination while working in her personal paint studio. (*Id.* at 20:7; 23:2; 25:18).

3. In 2013, Duncanson submitted copyright registration applications to the United States Copyright Office ("USCO") for the paintings *Blue Depth*, *Bubbling Joy*, and *Twisted Love*. (*Id.* at 86:9–89:9). As a result, the USCO issued certificates of registration for *Blue Depth* (VA 1-11-154), *Bubbling Joy* (1-860-451), and *Twisting Love* (VA 1-872-086). (*Id.*).

4. Wine and Canvas is a business model in the business of paint parties. (*Id.* at 6:9–20). At all relevant times, Defendant Bloomington was a licensee of Wine and Canvas, and hosted paint parties where artists teach students how to paint a featured painting through step-by-step instructions. (*Id.* at 210:2–6).

5. The artists who teach the paint classes are hired by Bloomington as contractors. (*Id.* at 159:9–10). The contracted artists choose what artwork they want to teach, and submit a copy of that artwork to Bloomington. (*Id.*).

6. Prior to the parties, Bloomington makes a copy of the artwork and submits it to Wine and Canvas corporate for approval. (*Id.*). Bloomington advertises the featured artwork on its website, www.wineandcanvas.com, and on its facebook page. (*Id.* at 156:6–7).

7. On www.wineandcanvas.com, customers can look at a calendar for parties scheduled at numerous locations across the country, and view images of the paintings that will be taught at those parties. (*Id.* at 44:2–13). Customers can then click on the image of the painting they are interested in and sign up and pay for the class on the website. (*Id.*). The cost of the class, as advertised on the website, is $35 per student. (*Id.* at 51:2–5).

8. Bloomington also displays the artists' artwork on the walls of the Bloomington studio. (*Id.* at 159:1–3).

9. In 2012, someone notified Duncanson that paint party studios were using her original artwork. (*Id.* at 46:7–47:8). After searching online, Duncanson found her artwork being used on www.wineandcavas.com and Bloomington's facebook page. (*Id.*). Specifically, Duncanson found pictures of students painting her original artwork in paint classes held by Bloomington. (*Id.*). Duncanson also found her original artwork displayed in the calendar section of the website, advertised as the featured painting for a class scheduled on January 31, 2012. (*Id.* at 49:14–25).

10. On April 16, 2012, Duncanson sent cease and desist emails to every email address listed on the contact page of the website, including the email addresses sarah@wineandcanvas.com, josh@wineandcanvas.com, and

infobloom@wineandcavas.com, which were listed as the email address for the Bloomington location. (*Id.* at 52:21–53:5, 67:14–20; Pl. Ex. 28). Duncanson did not receive a reply from her April 16, 2012, email. (Doc. 308, 54:20–25).

11. After continuing to monitor Bloomington's website and facebook page, Duncanson found pictures of art classes where her artwork was the featured painting. Duncanson's art was featured at the following classes:

    a. July 9, 2011: Bloomington held a class where it instructed fifteen (15) students how to paint artwork identical to Duncanson's art, *Twisting Love*. (*Id.* at 61:24–65:16).

    b. November 7, 2011: Bloomington held a class where it instructed ten (10) students to paint artwork identical to Duncanson's art, *Bubbling Joy*. (*Id.*).

    c. September 28, 2012: Bloomington held a class where it instructed twenty-four (24) students to paint artwork identical to Duncanson's art, *Bubbling Joy*. (*Id.*).

    d. January 31, 2013: Bloomington held a class where it instructed thirty-one (31) students to paint artwork identical to Duncanson's art, *Blue Depth*. (*Id.*).

12. On February 7, 2013, Duncanson sent a second cease and desist letter to the same email addresses found on the contacts page of www.wineandcanvas.com. (Pl. Ex. 27; Doc. 308, 67:17–23).

13. On February 8, 2013, Duncanson received a response from Bloomington's attorney, Mr. Adam Davis. (*Id.*). Mr. Davis's email, which included all of the

same email addresses where Duncanson sent her cease and desist letters. (Doc. 308, 67:1–11).

## IV. CONCLUSIONS OF LAW

### A. Direct Infringement

To establish direct copyright infringement, Duncanson must prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Bateman v. Mnemonics, Inc.,* 79 F.3d 1532, 1541 (11th Cir. 1996) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).

Duncanson admitted into evidence, without objection, copies of certificates of registration for her artwork, *Twisting Love* (Pl. Ex. 1), *Bubbling Joy* (Pl. Ex. 3), and *Blue Depth* (Pl. Ex. 5a). Bloomington does not dispute the validity of these copyright registrations, thus establishing the first element of a claim for direct copyright infringement. 17 U.S.C. § 410(b) ("[A] certificate of registration made before or within five years of the first publication of the work shall constitute prima facie evidence of the validity of the copyright."). Likewise, there is no dispute that elements of the works were copied at various paint parties held by Bloomington. (*See, e.g.*, Doc. 308, 64:8–9) (stipulating that the paintings featured at Wine and Canvas Bloomington's art classes were "the same" as Duncanson's copyrighted works).

Bloomington argues that it is not liable for direct infringement because Duncanon failed to prove that Bloomington was the direct infringer. (Doc. 315, p. 16). Bloomington submits that the direct infringers in this case are the artists who were contracted to teach the various parties where Duncanson's works were copied. (*Id.*) ("[T]he direct infringement in the case at bar is alleged to have been incurred by the Contracted Artists

themselves."). Relying on a traditional theory of vicarious liability, Bloomington maintains that Duncanson failed to establish that Bloomington is liable for the actions of the artists whom it hired as independent contractors. (*Id.*) (citing the elements of vicarious infringement liability from *Oravec v. Sunny Isles Luxury Ventures L.C.*, 469 F. Supp. 2d 1148, 1172 (S.D. Fla. 2006), *aff'd*, 527 F.3d 1218 (11th Cir. 2008)).

The Court need not reach the issue of vicarious liability, however, because Bloomington took direct actions that infringed upon Duncanson's copyrighted works. For example, Bloomington publicly displayed images of students painting Duncanson's art in various classes in 2011 and 2012 on both www.wineandcavas.com and on its facebook page. (Doc. 308, 46:7–22). Bloomington also copied Duncanson's art by publishing a picture of her artwork in the calendar section of the website to promote upcoming classes where her artwork would be the featured painting. (*Id.* at 49:14–25). These actions were performed by Bloomington, not the independently contracted artists, and are sufficient to find Bloomington liable for direct copyright infringement.

Furthermore, Bloomington is vicariously liable for the direct copyright infringement of the independently contracted artists. For copyright infringement, it has been widely held that one can be vicariously liable for copyright infringement, even in the absence of a traditional employer-employee relationship. One may be vicariously liable for copyright infringement if (1) he has a right and ability to supervise the infringing activity, and (2) has a direct financial interest in the activity. *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129, 1138 n.19 (11th Cir. 2007) (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 914 (2005)). In this case, the artists turn the artwork in to Bloomington for approval. In other words, Bloomington supervises the infringing activity by choosing

which paintings are painted in its classes. (Doc. 308, 159:18–20). Bloomington also has a direct financial interest in the activity because Bloomington collects $35 per class featuring Duncanson's artwork. (*Id.* at 15:2–5). Because Bloomington has the right and ability to supervise the teaching artists' infringement and has a direct financial interest in the infringing activity, Bloomington can be held vicariously liable for the teaching artists' direct infringement.

Because the evidence presented at trial establishes that Duncanson owns valid copyrights for original works that were copied by Bloomington, Duncanson is entitled to judgment on her direct infringement claims (Counts 71, 73, 75, and 77).

### B. Contributory Infringement

Duncanson's remaining Counts (Counts 72, 74, 76, and 78) allege that Bloomington is liable for contributory copyright infringement for teaching and encouraging students to infringe upon Duncanson's copyrighted artwork. (Doc. 146, p. 217).

"Contributory infringement originates in tort law and stems from the notion that one who directly contributes to another's infringement should be held accountable." *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996); *see also Grokster*, 545 U.S. at 930. "A claim of contributory copyright infringement arises against one who intentionally induces or encourages the direct infringement of another." *Cambridge Univ. Press v. Patton*, 769 F.3d 1232, 1242 n.6 (11th Cir. 2014). To establish contributory copyright infringement, the following elements must be satisfied: "(1) direct copyright infringement of a third-party; (2) knowledge by the defendant that the third-party was directly infringing; and (3) material contribution to the infringement." *Parker v. Google, Inc.*, 242 Fed. App'x 833, 837 (3d Cir. 2007); *see also Oravec*, 469 F. Supp. 2d at 1174.

Bloomington argues that Duncanson's contributory liability claims fail because Duncanson failed to establish proof of direct infringement. (Doc. 315, p. 16). As discussed previously, however, Duncanson established that her copyrighted work was copied at paint parties hosted by Bloomington. During those parties, both the independently contracted artists and the students copied Duncanson's art, constituting a direct infringement by a third party.

At issue, then, is whether Bloomington had sufficient knowledge that the artists and students were engaged in direct infringement. Duncanson argues that the knowledge requirement is met because Bloomington became aware that its artists were using Duncanson's artwork when Duncanson sent her cease and desist letter to Bloomington's email addresses on April 16, 2012. (Doc. 313, p. 11). Although Duncanson did not receive a response to her original cease and desist email from April 2012, she did receive a reply from Bloomington after she sent a second cease and desist email on February 7, 2013. The April 2012 and February 2013 emails were sent to the same list of email addresses. (Pl. Ex. 27). Because Bloomington was capable of receiving emails from these addresses in 2013, the Court concludes that Bloomington was also capable of receiving emails from the addresses in 2012. The Court thus finds that Bloomington acquired the knowledge that the artists and students were copying Duncanson's artwork as early as April 16, 2012. Nonetheless, Bloomington continued to host parties where Duncanson's artwork was copied through January of 2013.

Lastly, Bloomington made material contributions to the infringement. Bloomington controlled which artwork was chosen for the classes; Bloomington accepted payment from the students to attend the classes; and Bloomington advertised, promoted, and

encouraged enrollment in the classes where Duncanson's artwork was copied. (Doc. 308, 210: 11-13).

Because Bloomington knew of the direct infringement of Duncanson's artwork, and materially contributed to that infringement, Duncanson is entitled to judgement on her contributory infringement claims (Counts 72, 74, 76, and 78).

### C. Calculation of Damages

As the prevailing party, Duncanson is entitled to the "actual damages suffered by . . . her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(a).

*1. Actual Damages*

The copyright owner's actual damages include the amount of revenue that the owner would have received in the absence of the infringement. *Montgomery v. Noga*, 168 F.3d 1282, 1295 n.19 (11th Cir. 1999). "[A] claim for lost profits may include a retroactive license fee measured by what the plaintiff would have earned by licensing the infringing use to the defendant." *Thornton v. J Jargon Co.*, 580 F. Supp. 2d 1261, 1276 (M.D. Fla. 2008).

In this case, Duncanson licensed the use of her artwork to Uptown Art, a "paint party" company with a similar business model as Bloomington. Pursuant to Duncanson's agreement with Uptown Art, Duncanson receives a licensing fee of $2 per student when she licenses her work to Uptown Art for use in its paint parties. Given the similarities between Uptown Art and Bloomington, the Court finds that a $2 licensing fee per student is an appropriate measure of Duncanson's actual damages. The parties agree that

Duncanson's art was copies by a total of 80 students at the Bloomington Wine and Canvas location. (Doc. 308, 61:24–65:16). Duncanson's actual damages therefore equal to $160 in lost licensing fees.

*2. Bloomington's Profits*

Along with actual damages, Duncanson is entitled to any of Bloomington's profits that are attributable to the infringement. The purpose of an award of the defendant's profits is "to prevent the infringer from unfairly benefiting from a wrongful act." H.R. Rep. No. 94–1476, 94th Cong., 2d Sess., 161 (1976). In establishing Bloomington's profits, Duncanson "is required to present proof only of the infringer's gross revenue, and [Bloomington] is required to prove [its] deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b).

Duncanson testified, without objection, that the website for Wine and Canvas advertised that its classes cost $35 per student. (Doc. 308, 51:2–5). This testimony was bolstered by evidence of email communications between Duncanson and Bloomington's attorney, Mr. Davis, in which Duncanson estimates her damages using the $35 per student ticket price. (Pl. Ex. 27). That Mr. Davis did not contest this price in the emails supports Duncanson's testimony that Bloomington charged $35 per student to attend its events. Because the parties stipulate that 80 students attended classes that infringed upon Duncanson's work, Duncanson sufficiently established that Bloomington's gross revenue amounted to $2,800.

Since Duncanson established gross revenue, the burden shifts to Bloomington to prove any deductible expenses that would reduce the amount of profits it received as a result of its infringement. 17 U.S.C. 504(b). To establish its deductions, Bloomington

submitted a copy of a chart created by Bloomington's attorney, Mr. Davis, and Bloomington's owner, Sarah Wathen ("Wathen"), which depicts the revenue from each class along with the deductions Bloomington is attempting to claim. (Doc. 315, p. 15).

First, Bloomington seeks to deduct the amount it paid to the artists who taught the classes where the artwork was infringed. (Doc. 314, p. 15). Duncanson argues that the amounts paid to the artists, who were also direct infringers in this case, cannot be deducted from the amount of profits Bloomington received. (Doc. 313, p. 19). Although not briefed by Bloomington, there is support for allowing an infringer to deduct expenses paid to other infringers. *See, e.g.*, *Smith v. Little, Brown & Co.*, 396 F.2d 150, 151 (2d Cir. 1968) (holding that "[t]he district court was plainly correct in permitting defendant to treat the royalties paid to the author of the infringing book as an element of its cost in computing the profits which plaintiff was entitled to recover"). At trial, Bloomington submitted into evidence several invoices which reflect that Bloomington paid artists $150 per class. Accordingly, the Court will deduct $150 from each infringing class for artist pay.

Second, Bloomington seeks to deduct an 8% royalty fee from each class. During trial, Wathen testified that Bloomington paid an 8% royalty fee to Wine and Canvas corporate. (Doc. 223:12–20). The Court finds Wathen's testimony credible, and will therefore deduct an 8% royalty fee from each infringing class. *Love v. Kwitny*, 772 F. Supp. 1367, 1372 (S.D.N.Y. 1991), *aff'd*, 963 F.2d 1521 (2d Cir. 1992) ("[T]here was nothing improper about payment of the royalty, which was a legitimate expense, and authority supports a deduction.").

Third, Bloomington seeks to deduct costs for paint, paper supplies, and canvases. To support its claim for art supply deductions, Bloomington submitted receipts for

canvases purchased at Michael's (Def. Ex. 14); paper products purchased at Cash and Carry (Def. Ex. 15); and paints purchased from Wine and Canvas (Def. Ex. 16). Wathen then testified as the amount per student Bloomington spent on these supplies per event. (Doc. 308, 224:1–24). Duncanson argues that the evidence submitted at trial regarding art supply deductions was insufficient because the receipts postdated some of the classes at issue in this case. (Doc. 313, p. 19). Deductions for art supplies are typically allowable when calculating the amount of damages owed for an infringer's profits. *See e.g., Sygma Photo News, Inc. v. High Soc. Magazine, Inc.*, 778 F.2d 89, 93 (2d Cir. 1985). The Court finds that Wathen's testimony regarding the price of the supplies is credible and sufficiently supported by the receipts placed in evidence. Accordingly, the Court will deduct $2 per person for canvases, $1.80 per person for paint, and $0.78 per person for paper products.

Next, Bloomington seeks to deduct overhead costs for rent, utilities, and staff salaries. Ducanson objects to these deductions because "Bloomington would have incurred [these costs] whether or not the infringement occurred . . . ." (Doc. 313, p. 18). "'Overhead' which does not assist in the production of the infringement should not be credited to the infringer . . . ." *Sheldon v. Metro-Goldwyn Pictures Corp.*, 106 F.2d 45, 54 (2d Cir. 1939), *aff'd*, 309 U.S. 390 (1940). In other words, rent and staff salaries that are paid whether or not the infringement occurs may not be deducted from an infringer's profits. *Id.* Here, there is no evidence that the staff salaries or rent and utility payments are directly attributable to the infringing activity. The Court will therefore deny those deductions.

Finally, Bloomington claims that it did not receive $35 from every student that attended one of the classes at issue in this case. Wathen testified that Bloomington would sometimes run promotional events, during which the full $35 ticket price would not be collected. During trial, Bloomington submitted copies of a report generated in a program called CimpleBox, in which Bloomington recorded the registration fees collected for each class. According to the CimpleBox reports, Bloomington collected $350 in registration fees for the November 7, 2011, class (Def. Ex. 8); $350 for the September 28, 2012, class (Def. Ex. 10); and $755 for the January 31, 2013, class (Def. Ex. 12). The Court finds Wathen's testimony regarding discounted ticket prices credible and supported by evidence for these classes. Based on its chart summarizing their deductions, Bloomington also seeks to reduce the gross revenue from the July 9, 2011, class. The Court is unable to find any evidence to support a reduction in the revenues collected from the July 9, 2011, class, and Bloomington has not directed the Court to any evidence that would reflect anything less than the $35 ticket price. Accordingly, the Court will assume that each of the 15 students that attended the July 9, 2011, class paid the $35 registration fee.

The following charts summarize the total profit incurred for each class where Duncanson's art was infringed:

| 7/9/2011 | Twisting Love | 15 students | 11/7/2011 | Bubbling Joy | 10 students |
|---|---|---|---|---|---|
| | Income | 525 | | Income | 350 |
| | Royalty Fee | 42 | | Royalty Fee | 28 |
| | Artist Pay | 150 | | Artist Pay | 150 |
| | Canvases | 30 | | Canvases | 20 |
| | Paint | 27 | | Paint | 18 |
| | Paper | 11.7 | | Paper | 7.8 |
| | **PROFIT** | **264.3** | | **PROFIT** | **126.2** |

| 9/28/2012 | Bubbling Joy | 24 students | 1/31/2013 | Blue Depth | 31 Students |
|---|---|---|---|---|---|
| | Income | 350 | | Income | 755 |
| | Royalty Fee | 28 | | Royalty Fee | 60.4 |
| | Artist Pay | 150 | | Artist Pay | 150 |
| | Canvases | 48 | | Canvases | 62 |
| | Paint | 43.2 | | Paint | 55.8 |
| | Paper | 18.72 | | Paper | 24.18 |
| | **PROFIT** | **62.08** | | **PROFIT** | **402.62** |

Total profits incurred by Bloomington as a result of its infringement of Duncanson's art totals $855.20.

In sum, the Court finds that Duncanson is entitled to $160 in actual damages and $855.20 in profits incurred by Bloomington, totaling $1,015.20 in damages.

## V. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. The Court finds in favor of Plaintiff Megan Aroon Duncanson for Counts 71–78 of the Second Amended Complaint (Doc. 146).

2. Plaintiff shall recover from Defendant, SJ Wathen Bloomington LLC F/K/A Wine and Cavas Bloomington, LLC, One Thousand and Fifteen and 20/100 Dollars ($1,015.20) in damages.

3. Plaintiff shall have fourteen (14) days from the date of this order to file any motion for attorney's fees and expenses.

4. This Court retains jurisdiction of this matter for the purposes of resolving all post-trial motions for attorney's fees, expenses, and costs.

5. The Clerk of Court is directed to enter judgment accordingly and to close the file.

**DONE AND ORDERED** in Orlando, Florida, on February 27, 2018.

*signature*
PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties